UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC
JUN 21 2017
US DISTRICT COURT
WESTERN DISTRICT OF NC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:17-cr-182-MOC |
| | ) | |
| | ) | **BILL OF INDICTMENT** |
| v. | ) | |
| | ) | Violation: 18 U.S.C. § 1001(a)(2) |
| | ) | |
| (1) ALEXANDER SAMUEL SMITH | ) | |
| a/k/a "Amir Alexander" | ) | **"UNDER SEAL"** |
| | ) | |

The Grand Jury Charges:

## INTRODUCTION

At all times material herein:

1. ALEXANDER SAMUEL SMITH a/k/a "Amir Alexander" ("SMITH"), defendant herein, in Mecklenburg County, North Carolina, within the Western District of North Carolina and elsewhere, met and communicated with a person he understood to be a supporter of the Islamic State of Iraq and al-Sham ("ISIS"), a designated Foreign Terrorist Organization. SMITH discussed with this individual his desire and plans to travel to Syria and offered his assistance in helping others to travel to Syria in support of ISIS.

2. In and around July 2014, SMITH initiated contact with a person, who unbeknownst to Smith was an FBI confidential human source (hereinafter "The Source"), who identified himself to SMITH as an ISIS representative.

3. Between August and November, 2014, SMITH discussed with The Source his desire and plans to travel to Syria to fight with ISIS.

4. A person known to the grand jury as SMITH's girlfriend was then an employee of a certain domestic U.S. airline. One benefit of her employment with this domestic U.S. airline was the ability to purchase passes for the use of others to fly at discounted fares, known as "buddy passes." On or about November 19, 2014, during SMITH's meeting with The Source in Matthews, North Carolina, SMITH told The Source "if you need a buddy pass or something like that to be cheaper on the flight, let me know."

5. On or about March 18, 2015, SMITH was communicating with The Source via Skype, when The Source reminded SMITH of his offer to obtain a buddy pass for discounted travel. The Source asked SMITH if he could still get such tickets for "a brother," who ISIS "needed a lot." (The "brother" will hereinafter be referred to as "Individual A.") The Source told SMITH he wanted to arrange a buddy pass for Individual A to travel from Tampa Bay, Florida, to Buffalo, New York. From Buffalo, Individual A would travel to Canada and then to Europe "so I [The Source] can send him to you know where"

(referring to Syria). SMITH replied, "I'll check on it for you. I know someone who may ...uh ... have some buddy passes for sale ... uh ... for very cheap."

6. SMITH replied to The Source via text message on March 19, 2015, that the price for a one-way ticket/buddy pass from Tampa Bay, Florida, to Buffalo, New York, would be "80 bucks" and that in order to book the ticket, he needed the name and date of birth as shown on Individual A's traveler's identification.

7. On or about March 20, 2015, The Source further explained to SMITH: Now I'm gonna get him tickets from Tampa, Florida to Buffalo... from Buffalo, two or three brothers gonna meet him there... they're gonna sneak him to Canada... sneak him, not (chuckle)... so from Canada, he's going to Europe... from Europe, going to Turkey... from Turkey to Syria."

8. Also on or about March 20, 2015, SMITH cautioned The Source, "Just make sure whatever he's doing is on the low..." "Just don't let him [Individual A] appear on no video or nothing like that. I don't want to see this guy and then they link it back or something like that."

9. The Source told SMITH that Individual A's name is "Mohamed Hilal" and described him as an American who came from Egypt when he was three years old, was employed as a computer analyst with a big company, and could "hijack any computer, any cell phone, around the world." The Source told SMITH that Individual A had expressed his desire to travel to Syria to serve his religion and ISIS. SMITH replied in Arabic, "Masha, Allah," meaning "God has willed it."

10. On or about March 20, 2015, SMITH caused his girlfriend to purchase a buddy pass for Individual A to travel on March 22, 2015 from Tampa Bay, Florida, to Buffalo, New York.

11. On or about March 20, 2015, SMITH forwarded an email message to The Source with the itinerary and booking information for Individual A's travel to Buffalo, New York.

12. On or about January 29, 2016, FBI Special Agents interviewed Smith's girlfriend. Hearing about the FBI's contact with his girlfriend, SMITH called the FBI agents who talked with his girlfriend and agreed to an interview in the FBI's Charlotte, North Carolina, offices.

13. On or about February 16, 2016, SMITH drove himself to the FBI's Charlotte Offices where he agreed to provide truthful answers to the FBI Special Agents' questions.

14. During this voluntary interview, SMITH was asked: "[H]ave you ever talked with anyone about ... that you expressed to someone that you want to go to Syria and fight?" Smith replied "No. But I've told them that I... I... I... I've told them that I wish there was something I could do for people, but I've never had any plans or made any plans to go there and do anything."

15. SMITH was also asked during the interview on or about February 16, 2016: "have you ever ... talked with anyone that you wanted to go to Syria and join ISIS?" to which Smith

replied "No. We've talked... like I have talked to numerous... man you have to understand, the Muslim community... there's so much stuff going on right now in the Muslim community with everything... we've talked about any and everything. If ISIS comes up, we'll say something about ISIS. If another group comes up, that you know at the time, we'll say something about them. So it's not like I've expressed any plans that I want to support any group, or any people. You get what I'm saying? I just... I just want to be a normal American citizen, man, and live my life."

16. SMITH then well knew his statements above regarding his desire and plans to travel to Syria were false in that he discussed with The Source his desire and plans for traveling to Syria to fight with ISIS.

17. During the interview on or about February 16, 2016, SMITH was also asked: "So, some other information that we have that's kind of related to all of this, is that you knew that Mohamed Hilal was traveling...ah... he was planning to use the buddy pass that he got specifically to travel to join ISIS?" SMITH replied, "No."

18. The FBI Special Agents further explained and asked SMITH to confirm that "... although it wasn't his [Individual A's] final destination on the buddy pass, that he was traveling, and that was one leg of his trip, but that ultimately, starting with that travel from Florida to New York, he was going to eventually end up in Syria and that he was going to join ISIS?" SMITH replied:

> Man, I don't know...I don't know anything this guy was planning to do. I don't know what he had in his mind...what his plans were...I don't know anything about this guy. For instance, I have a friend who traveled from North Carolina to New York, and when he gets to New York...when he gets to New York and he drinks and smokes and does whatever he does, I don't know. You know what I'm saying? That's... you know... I ... I had nothing to do with that.
> ...
> But I in no way, shape or form assisted this individual to do anything.

19. SMITH then well knew his statements above regarding his knowledge and attempt to assist Individual A were false in that he discussed Individual A's travel plans with The Source.

20. The circumstances surrounding SMITH's planned travel to Syria, his assistance to Individual A, and his interview with FBI Special Agents on or about February 16, 2016, are matters within the jurisdiction of the FBI and the executive branch of the United States Government.

# COUNT ONE

**Violation**: 18 U.S.C. § 1001(a)(2) (False Statement to an Agency of the United States)

21. Paragraphs 1 through 4, 12 through 16 and 20 of the Introduction of this Bill of Indictment are re-alleged and incorporated herein.

22. On or about February 16, 2016, in Mecklenburg County, within the Western District of North Carolina, and elsewhere,

> (1) ALEXANDER SAMUEL SMITH
> a/k/a "Amir Alexander"

defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by falsely stating to FBI Special Agents then investigating a matter involving international terrorism that he had never discussed his desire or plans to travel to Syria. This statement was false because, as SMITH then and there knew, he had discussed his desire and plans to travel to Syria in support of ISIS with The Source.

All in violation of Title 18, United States Code, Section 1001(a)(2).

# COUNT TWO

<u>Violation</u>: 18 U.S.C. § 1001(a)(2) (False Statement to an Agency of the United States)

23. Paragraphs 1 through 13 and 17 through 20 of the Introduction of this Bill of Indictment are re-alleged and incorporated herein.

24. On or about February 16, 2016, in Mecklenburg County, within the Western District of North Carolina, and elsewhere,

>(2) ALEXANDER SAMUEL SMITH
>a/k/a "Amir Alexander"

defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by falsely stating to FBI Special Agents then investigating a matter involving international terrorism that he did not know that Individual A intended to use the buddy pass procured by SMITH to travel and support ISIS. This statement was false because, as SMITH then and there knew, he had discussed with The Source the travel plans of a person he [SMITH] believed to be a person who wanted to travel and assist ISIS.

All in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

*[signature]*

Michael E. Savage
Casey Arrowood
Assistant United States Attorneys