UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | DOCKET NO. 3:17-cr-182-MOC |
| v. | ) | |
| | ) | |
| (1) ALEXANDER SAMUEL SMITH | ) | |
| | ) | |
| a/k/a "Amir Alexander" | ) | |

# GOVERNMENT'S MOTION *IN LIMINE*

## INTRODUCTION

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and moves this Court *in limine* as follows:

(1) To preclude argument or evidence regarding the propriety of the government's investigative techniques and charging decisions;

(2) To preclude argument, without a proffer of evidence, that the defendant was a victim of a "perjury trap" or that entrapment is a defense to the false statement offenses alleged in the indictment;

(3) To preclude argument or evidence regarding the impact of a conviction on the defendant or his family;

(4) To preclude argument or evidence about the penalties faced by the defendant; and

(5) To preclude jury nullification arguments in general.

The Government makes this motion *in limine* in order to narrow the issues for trial, to exclude irrelevant, extraneous, or unduly prejudicial arguments or evidence, and to expedite this Court's determination of the legal disputes likely to arise during trial. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).

Likewise, a defendant's proposed evidence should be excluded when it "would confuse the jury and misdirect the jury's focus from the issues properly before it." *United States v. Wellons*, 32 F.3d 117, 120 n.3 (4th Cir. 1994).

## STANDARD OF REVIEW

"The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion." *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004). Likewise, "the decision to exclude evidence because of possible prejudicial effect rests in the sound discretion of the trial court." *United States v. Schnabel*, 939 F.2d 197, 202 (4th Cir. 1991). Similarly, "[t]he presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion." *Herring v. New York*, 422 U.S. 853, 862 (1975). "Since it [is] the court's responsibility to present [the law] to the jury in a clear manner, the court [will] not abuse its discretion by requiring the defense counsel to argue consistently with the correct law." *United States v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984).

## ARGUMENT

I. **The Court Should Preclude Argument or Evidence Regarding the Propriety of the Government's Investigative Techniques and Charging Decisions**

As the Court is aware, this case involves an investigation in which undercover government informants posed as persons willing to provide material support to ISIS. *See* Indictment at ¶ 2. In pre-trial pleadings, the defense has argued:

> [Mr. Smith's] statements were made to the FBI during the course of an undercover sting operation involving paid informants attempting to induce Mr. Smith to travel to Syria in support of ISIS. Mr. Smith never intended to and never did travel to Syria in support of ISIS as the Government's paid informants unsuccessfully attempted to induce him to do. Hence, the § 1001

charges, instead of *Travel to Lend Material Support* to a Foreign Terrorist Organization the Government agents attempted to manufacture.

*See* Defense Motion to Preclude Government Proposed Expert Testimony (Document No. 66, filed 3/13/2019) at 2.

Not only is the defense argument baseless, it is improper because neither the law enforcement techniques used by the agents nor potential alternative charges in this case are relevant to the defendant's guilt or innocence.[1] The Fourth Circuit has directly approved a jury instruction that "law enforcement techniques are not your concern." *United States v. Mason*, 954 F.2d 219, 222 (4th Cir. 1992). Likewise, the Court held in *United States v. Hedgepeth*, 418 F.3d 411, 420 (4th Cir. 2005), that "whether the prosecution targeted [the defendant] in its investigation is hardly probative of any 'fact that is of consequence to the determination of the action.' Fed. R. Evid. 401. The [Government Agency's] motive in investigating [the defendant] has not been shown to be probative of any element of the offenses for which she was being tried." *Id*. at 419-420.

Moreover, absent a claim of prosecutorial vindictiveness, the decision on whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). The doctrine of prosecutorial discretion places most pretrial prosecutorial decisions beyond challenge. *United States v. Soto-Beniquez*, 356 F.3d 1, 28 (1st Cir. 2004) (decisions about whether and whom to prosecute do "not present an issue that is reviewable by [a] court").

Therefore, the Court should preclude argument or evidence regarding the propriety of the Government's investigative techniques or its charging decisions.

---

[1] Contrary to the Defense argument, attempted material support could have been charged under the facts in the case under 18 U.S.C. § 2339B. The fact that the indictment in this case includes a lesser charge can be attributed to many factors that have nothing to do with the defendant's guilt or innocence.

## II. The Court Should Preclude Argument that the Defendant was a Victim of a "Perjury Trap" or that Entrapment is a Defense to the False Statement Offenses Alleged in the Indictment.

The defendant may claim that his voluntary interview with the FBI on February 16, 2016 was some form of a "perjury trap." This claim, however, is refuted by the uncontroverted fact that the defendant initiated the call to the FBI wherein he voluntarily agreed to be interviewed at the FBI's offices, drove himself to the interview, was free to leave at any time, and was twice provided the text of 18 U.S.C. § 1001 and warned that he could be prosecuted for lying. *See United States v. Sarihifard*, 155 F.3d 301, 308-9 (4th Cir. 1988)(holding evidence that agents did not believe defendant was not sufficient to raise an entrapment defense). The defendant argues that the false statement charges in this case result from the government's failure to induce him to travel to Syria. However, the issue in this case is whether the defendant lied to government agents on February 16, 2016, and not whether he was predisposed to provide material support to ISIS. In this regard, the defendant's argument is misleading and should be precluded.

Moreover, the "perjury trap" doctrine refers to instances where a defendant is compelled to give testimony before a grand jury, only to be later prosecuted under 18 U.S.C. § 1621. Where the perjury trap doctrine is recognized as a trial defense, it is a form of entrapment defense that must be established by the defendant. *United States v. Blevins*, 960 F.2d 1252, 1257 (4th Cir. 1992); *see The Perjury Trap*, 129 U. Pa. L. Rev. 624 (1981). The defense requires that the defendant show that the false testimony was illegally procured by the government. Thus, the defendant must demonstrate that the government induced him or her to commit the crime. When the government has a legitimate reason for asking a witness to testify before the grand jury, and the witness is provided with adequate warnings, the mere fact that the government knows that the witness may possibly provide false testimony does not establish the requisite showing of inducement for purposes of proving entrapment. *Sarihifard*, 155 F.3d at 307; *United States v.*

4

*Vesich*, 724 F.2d 451, 460-61 (5th Cir. 1984). It is not a "perjury trap" when uncooperative witnesses lie while being questioned in investigations that have a legitimate basis. *Id*.

The instant case is even further removed from a perjury trap scenario in that the defendant was not compelled to submit to an interview, let alone subpoenaed to testify before a grand jury. Instead, as noted above, he called the FBI seeking information about his girlfriend's subpoena to the grand jury. During that call he volunteered to meet with the FBI — likely to learn more about the Government's investigation. During the interview, the government's agents warned the defendant that he could be prosecuted under 18 U.S.C. § 1001 if he lied during the interview. Determining whether the defendant intended to travel to Syria to aid ISIS was a legitimate reason for the FBI's investigation. As the defense points out, concrete steps to do so would constitute material support of a designated terrorist organization. However, the defendant's intent to travel to Syria is not an element of the charged offense of lying about his discussions and plans to travel to Syria. Therefore, the defendant should not be permitted to argue that the FBI "set him up" to lie.

Likewise, the fact that the agents knew that the defendant was lying through most their interview is no defense. A finding of materiality is not dependent upon whether the fact finder was actually influenced by a defendant's false statements. *Sarihifard*, 155 F.3d at 307. Rather, a false statement is material if it is capable of influencing the fact finder's determinations. *Id*. A false statement's capacity to influence the fact finder must be measured at the point in time that the statement was uttered. *Id.* Thus, materiality is not dependent upon the believability of a false statement. *Id.* A statement is material if it is capable of influencing a function within the agency's jurisdiction. *See Brogan v. United States*, 522 U.S. 398, 402 (1998) (rejecting the "exculpatory no" doctrine.)

In *United States v. Fondren*, 417 Fed.Appx. 327, the defendant— a retired Air Force Lieutenant Colonel—was charged, in pertinent part, with lying to FBI agents investigating his communication of classified information to a Chinese national. The evidence at trial showed that the defendant made the following false statements: (1) that he had never included classified information in any of the papers he wrote for [a Chinese national]; and (2) that he had not given a draft copy of "The National Military Strategy of the United States of America 2008, Version 5" to [a Chinese national]. The Fourth Circuit rejected defendant's claim that his misstatements could not be material because the FBI had earlier arrested the Chinese national and found a copy of the National Military Strategy in the Chinese man's home. "It is well established law in this Circuit that a finding of materiality is not dependent upon whether the fact finder was actually influenced by a defendant's false statements." *Sarihifard,* 155 F.3d at 307; *see also United States v. Turner,* 551 F.3d 657, 664 (7th Cir.2008) (holding that defendant's "statements to the FBI probably had very little *actual* influence on the agents because there were already in possession of incriminating [information]" ... but, because "statements were aimed at misdirecting the agents, ... [it was] enough to satisfy the materiality requirement of § 1001") (emphasis in original); *United States v. White,* 270 F.3d 356, 365 (6th Cir.2001) ("If the false statements are received by an agency, they may be material even if the receiving agent or agency knows that they are false."); *United States v. Foxworth,* 334 Fed.Appx. 363, 366–67 (2d Cir.2009) ("That the FBI knew that the statements were false when they were made is irrelevant to their materiality") (unpublished).

There are two elements to the affirmative defense of entrapment: (1) the government's inducement and (2) the defendant's lack of predisposition to commit the crime. *United States v. Squillacote*, 221 F3d. 542, 564 (2000)(citing *United States v. Sligh*, 142 F.3d 761, 762 (4th Cir.

1998). "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *United States v. Russell*, 411 U.S. 423, 463 (1973). Before arguing entrapment, the defense should be required to articulate how the government induced him to knowingly and willfully lie in his voluntary interview with the FBI. Otherwise, the defendant should not be permitted to confuse the jury with an argument that the defendant was "induced" to lie.

### III. The Court Should Preclude Argument or Evidence Regarding the Impact of a Conviction on the Defendant or his Family

The defendant should not be permitted to draw attention to his or her family, including his family's need for support, either financial or emotional, nor the effect of a conviction upon such a family. This kind of information is irrelevant and amounts to nothing more than an appeal to the sympathy of the jury. *See, e.g., United States v. Ramirez*, 482 F.2d 807, 816 (2d Cir. 1973); *United States v. D'Arco*, 1991 WL 264504 at *4 (N.D. Ill. 1991) (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family member"); *United States v. Shields*, 1991 WL 236492 at *4 (N.D. Ill. 1991) (granting motion in limine precluding "any testimony regarding the possible impact which a conviction might have upon any family member"). Personal or familial consequences of trial or conviction should play no part in the jury's deliberations whether the relevant defendant is guilty of the crimes charged. Accordingly, the Court should allow the motion in limine on this issue.

### IV. The Court Should Preclude Arguments or Evidence about the Penalties Faced by the Defendant

The Court should preclude the defendant from introducing evidence, making an argument, or otherwise mentioning the potential penalties he faces if convicted. The potential penalties faced by the defendant are irrelevant to the jury's determination of guilt or innocence. *See* Fed. R. Evid. 401; *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should reach its

verdict without regard to the sentence that might be imposed); *United States v. Shannon*, 981 F.2d 759, 761 (5th Cir. 1993) ("The well-established general principle is that a jury has no concern with the consequences of its verdict. . . . This Circuit has long recognized that punishment and sentencing are matters entrusted exclusively to the trial judge.") (quotation omitted). While the law prohibiting such references to potential penalties is especially clear, the Court should be vigilant to questions of government witnesses designed to elicit answers, which would properly bear upon their credibility, about the potential punishment maximums the witnesses face or have faced. These answers should not be used as a basis for argument to the jury that it should consider those potential punishments when determining the guilt or innocence of the defendants. Accordingly, the Court should allow the motion in limine on this issue.

## V. The Court Should Preclude Jury Nullification Arguments in General

It would be improper for the defendant in any way to suggest to the jury that it should acquit for reasons beyond the facts and the law. In 1895, the United States Supreme Court decided *Sparf & Hansen v. United States*, 156 U.S. 51, 74 (1895), which is still universally regarded as the decisive case disapproving of jury nullification. In *Sparf*, the defendants, convicted of murder, sought review on the theory that the trial judge had unconstitutionally usurped the jury's province by instructing it that, although the jury had the power to bring in a verdict of manslaughter, any verdict other than a conviction for murder, the crime charged, or a total acquittal would violate its oaths and duties. *Id*. at 59-63. The Supreme Court rejected their argument, holding that, although a jury has an absolute power to ignore a judge's directions, it has no such right and to do so is wrongful. *Id*. at 101-02. Therefore, though a judge cannot usurp the jury's raw power to nullify a verdict by, for example, directing a conviction or vacating an acquittal, the Supreme Court in *Sparf* held that it is proper for a judge to instruct a jury to take the law only from the judge and not find it on its own. *Id*. at 102-03; 105-06. As the Supreme

8

Court explained: "Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves." *Id.*

Although some have since argued for the "right" of a jury to an instruction informing the jury of their nullification power, the federal courts of appeals have followed the Supreme Court's decision in *Sparf* and have consistently declared that, although constitutionally unpreventable, nullification is a wrongful action. *E.g., United States v. Marchese*, 438 F.2d 452, 455 (2d Cir. 1971) (holding court did not err in instructing jury that it is bound to accept law as given by court). Thus, the law is plain that it is improper for the defendants to suggest in any way that the jury should acquit him or her even if it finds that the United States has met its burden of proof. *See United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("[A]n unreasonable jury verdict . . . is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification . . . is not a right, either of the jury or of the defendant"); *Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) ("Defense counsel may not press arguments for jury nullification in criminal cases"); *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognized that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath."); *United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996) (holding good motives do not nullify a defendant's violation of the law and a jury should not be encouraged to consider such arguments).

It is proper to file a motion in limine to exclude such argument from the trial. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (affirming trial court's granting of

government's motion in limine to exclude jury nullification arguments); *United States v. Sloan*, 704 F. Supp. 880, 884 (N.D. Ind. 1989) (granting government's motion in limine to preclude jury nullification arguments). This Court can and should prevent defense counsel from pressing arguments for jury nullification in criminal cases. *See United States v. Young*, 470 U.S. 1, 7-10 (1985) (holding that court has duty to prevent counsel from making improper arguments to the jury, including those that are designed to divert the jury from its duty to decide the case on the facts and the law); *United States v. Avery*, 717 F.2d 1020, 1027 (6th Cir. 1983) (affirming district court's refusal to encourage jury to consider anything other than the facts and law); *United States v. Burkhardt*, 501 F.2d 993, 996-97 (6th Cir. 1974) (holding that court should instruct jury to ignore everything but the facts and the law); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[N]either the court nor counsel should encourage jurors to exercise [nullification] power. A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification.") (citations omitted); *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) (explaining that trial court should prevent defense counsel from presenting nullification arguments to the jury); *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) (holding that a district court has duty to try to ensure that the jury reaches a verdict based upon the evidence and the law). Accordingly, defense counsel should focus the jury's attention on the facts and not try to confuse it with appeals based on emotion, sympathy or other similar consideration and the Court should allow the motion in limine on this issue.

## CONCLUSION

Accordingly, for the reasons set forth above, the Government respectfully requests that the Court preclude argument regarding (1) the propriety of the government's investigative techniques and charging decisions; (2) that the defendant was a victim of a "perjury trap" or that entrapment is a defense to the false statement offenses alleged in the indictment; (3) the impact

of a conviction on the defendant or his family; (4) the penalties faced by the defendant; or (5) suggesting jury nullification in general.

RESPECTFULLY SUBMITTED this 13th day of March 2019.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/ Michael E. Savage
North Carolina Bar Number 33159
mike.savage2@usdoj.gov
Assistant United States Attorneys
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28211
704/344-6222 (Office)
704/227-0197 (Fax)
Mike.Savage2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all parties and counsel of record by submitting it to the Court's Electronic Filing System.


                                                //s// Michael E. Savage
                                                Assistant United States Attorney